Judgment accordingly.

---

## MARLBOROUGH *vs.* SISSON AND OTHERS.

In an action on the case, by the town of M, for illegally transporting a pauper into said town, where the question was, whether such pauper had formerly gained a settlement in the state of Vermont, under the statute of that state, which provides, that every person who shall inhabit in any town or place within said state, and have been charged with and paid his share of the public rates or taxes of such town or place, for the space of two years, shall acquire a settlement in such town, and it appeared that such taxes were assessed and collected in much the same manner as in this state, but there

Marlborough *v.* Sisson and others.

was no record evidence before the court, that a tax, claimed to have been paid by said pauper, had been legally assessed, and no foundation had been laid for dispensing with such evidence ; it was held, that such evidence was not admissible.

The defendant in such action, having offered evidence, that said town of M had rendered aid and support to said pauper and his family at various times, and while poor and chargeable as a pauper, but which aid said town claimed was rendered under a mistake, and without knowing the real place of said pauper's settlement, requested the court to instruct the jury, that, though the plaintiffs were thus ignorant, and mistaken, yet such facts, in connection with other evidence in the case, would authorize the jury to presume any facts not established by the defendant's evidence, necessary to constitute said pauper's settlement in said town of M. But the court instructed the jury, that said acts, if proved, did not estop or preclude the plaintiffs from showing, that said pauper was not legally settled in said town, when said aid was furnished, but that they were evidence, in the nature of admissions against said town, which the jury were to consider, in connection with the question, whether said aid was or was not furnished by the plaintiffs, under any mistake as to the real place of said pauper's settlement, or whether the plaintiffs so acted, knowing, or with the means of knowing, the place of his real settlement. Held, that such course was correct.

The court may, at its election, entirely disregard a request to give particular instructions to the jury, which are not wholly correct, or may comply with the same, so far as the instructions asked for are correct.

THIS was an action on the case. The declaration embraced two counts. The first stated that, on the 8th of January, 1851, one Samuel Ingraham, an aged and infirm man, nearly eighty years old, and who had no legal settlement in the town of Marlborough, was residing in the town of East Haddam, and being, from age and infirmity, unable to support himself, and, having no means of subsistence, was chargeable to, and supported by, said town of East Haddam ; and the defendants, who were then, and now are, inhabitants of said town of East Haddam, and having property liable to taxation, and being actually taxed therein for the expenses of said town of East Haddam, knowing the premises, but contriving and fraudulently intending to cast the burden of supporting the said Ingraham upon said town of Marlborough, and thereby to relieve said town of East Haddam, and themselves, as inhabitants thereof, from the expense of supporting said Ingraham, transported him, on said 8th of

January, into said town of Marlborough, and left him there, in want and distress, as aforesaid. And, by reason of the premises, the plaintiffs were, by law, obliged to support, and have since so supported the said Ingraham, and have expended for the same, the sum of one hundred dollars; and the said Ingraham still continues to reside in said Marlborough, destitute as aforesaid, and said Marlborough still continues liable to support, and does support him.

The defendants were selectmen of said town of East Haddam, and, in order to relieve said town of East Haddam, and themselves, as such inhabitants thereof, from the support of said Ingraham, and to subject the plaintiffs wrongfully thereto, on the day and year last aforesaid, made an *ex parte* application to certain of the civil authority of said East Haddam, and untruly represented to them, that said Ingraham was a settled inhabitant of said town of Marlborough, and thereby fraudulently procured a warrant directed to a constable, commanding him to transport said Ingraham to said town of Marlborough; and thereupon, by virtue of said warrant, and by procurement of the defendants, said constable afterwards, on said eighth day of January, transported said Ingraham into said town of Marlborough, and there left him, utterly destitute and helpless, as aforesaid. Whereby the plaintiffs, by law, were obliged to support and did support said Ingraham, &c.

The defendants pleaded the general issue, with notice that, under said plea, they would give in evidence that, on the 6th day of January, 1851, and for a long time before and subsequent, the defendants were selectmen of the town of East Haddam; that on the day aforesaid, and for a long time before and after, the said Samuel Ingraham, a settled inhabitant of the town of Marlborough, was residing in said town of East Haddam, unable to support himself and family, and became chargeable to said town of East Haddam; and that the defendants, as selectmen of said town, believing said Ingraham to be a settled inhabitant of the town of Marlborough, as it was their duty to do, applied to the civil author-

ity of said town of East Haddam, a major part of whom, by warrant under their hands, directed to William L. Cone, one of the constables of said town of East Haddam, ordered said Ingraham to be conveyed to said town of Marlborough, which warrant was executed by said constable, in conformity with the requirements thereof: which are the acts complained of in the plaintiffs' declaration.

On the trial to the jury, it was admitted that, in January, 1851, Samuel Ingraham, being a poor person, and unable to support himself, was, by virtue of the warrant set up in said notice, removed, by direction of the defendants, from said East Haddam into said town of Marlborough, where he has since remained in a poor and necessitous condition. The plaintiffs claimed to have proved, that they had expended, for the necessary and comfortable support and maintenance of said Ingraham, since said removal, one dollar per week for his board, and from five to seven dollars for his other necessary expenses.

It was admitted, that said Samuel was born on the 1st of March, 1774, in that portion of the society of Marlborough which was then a part of the town of Colchester, and which, by the act of 1803, incorporating the town of Marlborough, was included and still remains within the limits of the latter town, where his father resided, and that said Samuel was therefore a legally settled inhabitant of said town of Marlborough, at the time of its incorporation, and also, at the time of his removal from East Haddam, unless, subsequently to his arriving at the age of twenty-one years, he lost his settlement in said Marlborough, by having gained a settlement in the town of Weybridge, in the state of Vermont, or in the town of Hebron in this state.

The plaintiffs offered evidence to prove that said Samuel, in March, 1797, with his father, removed to said town of Weybridge, and remained there until the first part of March, 1800; and that while there, he was, for the space of one year, a healthy, able-bodied person, of peaceable behavior, and

able to pursue sufficiently, the ordinary branches of labor; and that, while he was so residing in Weybridge, he performed military duty there; and, in connection with said evidence, the plaintiff offered, and read in evidence, the statute of the state of Vermont, in force when said Samuel went to and while he so resided in said Weybridge, which enacts that " every person who shall inhabit in any town or place within said state, and shall, for himself, or on his own account, have executed any public office or charge in such town or place during one whole year, or shall have been charged with and paid his or her share of the public rates or taxes of such town or place, for the space of two years, shall be deemed and adjudged to have obtained a legal settlement in such town or place."

The plaintiff offered to prove, by the testimony of said Samuel, that, in the years 1798 and 1799, while he so resided in said town of Weybridge, he had been charged with and had paid his share of the public rates of said town, *viz.*, the town, county and state rates and taxes. He testified that, during said two years, he had been called on by the collector of said taxes, for payment thereof, and that he had always paid the same, when so called on by the collector therefor; but said Samuel could not recollect or state at what particular times, within said two years, he had been so called on or paid said taxes, or the amount thereof. And there was no other evidence except the testimony of said Samuel, to show the assessment on, or payment by him, of said taxes. The defendants denied any such assessment or payment of taxes, and objected to said testimony of said Samuel, as incompetent and inadmissible, for the purpose of proving that he had, during said time, been charged with, or paid any such taxes; but the court overruled said objection, and admitted said evidence.

The plaintiffs also offered to prove, that said Samuel ceased to reside in Weybridge, in March, 1800, and that he resided successively in several different towns, until April, 1812,

when he came to the town of Hebron, where he continuously resided more than six years, and thereby acquired a legal settlement in said Hebron, if he did not acquire a settlement in said Weybridge during his residence there.

The defendants denied that said Samuel ever so acquired a legal settlement in said Hebron, and offered evidence to prove, that no period of over two years elapsed while he so resided in Hebron, during which he did not receive aid and support from said town of Marlborough. They offered in evidence the books of said town of Marlborough, to show that, in the year 1805, said town furnished said Ingraham and his family with a house, and with provisions and necessaries of life, and paid the funeral expenses of his deceased child; and that he and his family were unable to support themselves, and they so continued to furnish him with aid, in support of himself and his family, and with medical attendance, in the years 1806, 1807, 1809, 1813, 1814, 1815, 1821, 1824, 1825, 1832, 1833, 1837, 1838 and 1839, and that, during all said time, he was unable to provide for himself and his family, and that, in 1820, said town of Marlborough paid bills for the support and necessary attendance furnished to the wife of Jared Ingraham, the son of said Samuel, born to him while he so lived in said Weybridge, and who had no settlement except in right of his father, and who was poor and unable to support himself and his wife; and that said town of Marlborough paid for the removal of said Jared and his family, in 1826, from said town of Colchester into said town of Marlborough, he being at the time poor, and chargeable as a pauper, and so continued to furnish said Samuel with aid while he lived in East Haddam and Marlborough, at various times down to the year 1848; and that, during that time, he was, for the most part, poor, and chargeable as a pauper; that, in 1832 and 1833, said Marlborough furnished said Samuel with provisions for himself and his family, and timber with which to work, and partly gain his livelihood; that, in the year 1837, while said Samuel was living in East Haddam, poor, sick,

and unable to take care of himself, said Marlborough assumed the care of him, and paid the expenses of his sickness; that in 1849, while said Samuel was residing in said town of Salem, in a condition of poverty and wholly unable to support himself, said Marlborough continued to pay the expenses of his support while there, and, under the direction of the selectmen of said Marlborough, caused him to be removed from said Salem, and placed in the poor-house of said Marlborough, where he remained about two months, when he left and returned to said Salem, and afterward, in 1850, came to said East Haddam, from whence he was, in January, 1850, removed to said Marlborough, in the manner set up in the defendants' notice.

The plaintiffs offered evidence to prove, and claimed to have proved, that, if any aid had been rendered, by said town of Marlborough, in the support of said Samuel or his family, as claimed by the defendants, it had been rendered under a mistake and ignorance, on the part of said town, and of its selectmen and agents, as to the real place of said Samuel's legal settlement, and ignorance that it was not in said Marlborough.

The defendants claimed, that said aid, so by them claimed to have been rendered by said Marlborough, was not rendered under any such mistake or ignorance, but that the selectmen of said Marlborough, from the year 1805 to the year 1824, who are now dead, were cognizant of said facts, connected with the residence of said Samuel in Weybridge, and also in Hebron, and that, with such knowledge, they continued such aid and support, and that these facts, in connection with the other evidence in the case, though the plaintiffs were under such mistake and ignorance, as claimed by them, thereby inducing the defendants to believe that he was legally settled in said Marlborough, and to act accordingly, would authorize the jury to presume any facts, not established by the defendants' evidence, necessary to continue said Samuel's settle-

ment in said town of Marlborough, and requested the court so to charge the jury.

The court did not charge the jury, on this point, as requested by the defendants, but instructed them, that said acts of the plaintiffs, in furnishing aid and support to said Samuel or his family or children, if proved by the defendants, did not estop or preclude the plaintiffs from showing, that said Samuel was not legally settled in said town of Marlborough, when such aid or support was furnished or given, but that they furnished evidence, in the nature of admissions against said town of Marlborough, which the jury were to consider, and to which they were to give such weight as, in the opinion of the jury, it was entitled to, on the question whether said Samuel was then or had been since settled in said town of Marlborough, and that, in weighing said evidence, they were to consider it, in connection with the fact, if it was proved by the plaintiffs, that said aid and support were furnished by said town of Marlborough, under a mistake or ignorance, on the part of said town, as to the real place of said Samuel's legal settlement, as claimed by the plaintiffs, as well as any proof adduced by the defendants, that the plaintiffs did not so act under any mistake or ignorance, or so acted with the knowledge, or the means of knowledge, of his place of legal settlement.

The jury returned a verdict for the plaintiffs ; and the defendants moved for a new trial, on the ground that the court erred in admitting the testimony objected to, and in omitting to charge the jury as requested by them.

*Bulkeley* and *W. D. Shipman,* in support of the motion, contended,

1. That the court erred, in admitting the testimony of Ingraham to prove that he had gained a settlement, under that clause of the statutes of Vermont, relating to the payment of taxes, because, 1. There was no evidence before the court, of any legal assessment of taxes, or that he was

" charged with " the same, within the meaning of the statute. Vermont Stat., vol. 1, pp. 383, 384, ed. 1808. *Starksboro* v. *Hinsbury*, 13 Verm., 215. ` Downing` v. *Roberts*, 21 Verm., 441. *Litchfield* v. *Farmington*, 7 Conn. R., 110. *Middletown* v. *Berlin*, 18 Conn. R., 189. 2. To prove that a settlement was gained, under this clause of the statute, it should be shown that a tax was legally laid and assessed, according to the requirements of the laws of Vermont then in force. Parol evidence is inadmissible, and incompetent to show this; at least, until it has been shown that the records of the town, relating to such assessment, have been lost, or can not be produced. Vermont Stat., vol. 1, pp. 414, 433, 420, 418, 407 and 408, vol. 2, 168. 1 Greenl. Ev., 113. *Downing* v. *Roberts*, 21 Verm., 441. *Collamer* v. *Drury*, 16 Verm., 574.. *Hury* v. *Chester*, 15 Verm., 460.

2. That the court erred in omitting to charge the jury, as requested by the defendants, that, from the course pursued by the plaintiffs, through a period of nearly half a century, in treating said pauper as a settled inhabitant of the town of Marlborough, and paying for his maintenance as such, in connection with the other circumstances in the case, they had a right to presume any facts consistent with the claim of the defendants, that his settlement still remained there. *Cambridge* v. *Lexington*, 17 Pick., 222. *Grote* v. *Grote*, 10 Johns., 402. *Schaober* v. *Jackson*, 11 Wend., 36, 37.

*T. C. Perkins* and *R. D. Hubbard*, contra, contended,

1. That, if the testimony of Ingraham conduced to prove any material fact in issue between the parties, the ruling of the court was correct.

2. That such evidence tended to prove that Ingraham was charged with taxes, and the payment by him could only be proved, by *parol*.

3. That this question is to be settled, as if the issue were between Ingraham and the town of Weybridge. That town

would be estopped from denying the legality of such assessment.

4. That the court was not required, by any principle of law, to instruct the jury that they were authorized to presume all the facts, not proved by the defendants, necessary to continue Ingraham's settlement in the town of Marlborough. The instructions asked for, assume that Marlborough was ignorant of the place of Ingraham's settlement, and their acts were no admissions.

5. That the instructions asked for, required the jury to presume that Ingraham did not reside in Weybridge, as the plaintiffs claimed he did; that he did not pay his public rates and taxes there, and that he did not acquire a settlement in Hebron. If the town of Marlborough acted in ignorance, why should these facts, and every other, be presumed against them?

6. That, if the instructions asked for were erroneous, the court is not bound to respond to them at all.

ELLSWORTH, J.   The defendants ask a new trial, because, first, there was no evidence of the existence of a tax, *legally* imposed upon the pauper, and secondly, the court mistook the law in its instructions to the jury.

Samuel Ingraham, the pauper, was born in that part of Colchester which is now Marlborough, and is therefore settled in Marlborough, unless he has since acquired a settlement elsewhere; which the plaintiffs insist is the fact.   The burden of proof is, therefore, on them.   This supposed new settlement is said to be gained in Weybridge, in Vermont, which settlement, according to our decisions, would be of the same effect as if acquired in a town in this state.   They say he removed to Weybridge many years since, and there lived and paid taxes, long enough to acquire a settlement, under the laws of Vermont.   By that law, " any person who shall inhabit in any town or place within the state, and shall, for himself or on his account, have executed any public

office, &c., or shall have been charged with, and paid, his or her share of the public rates or taxes of such town or place, for the space of two years, shall acquire a settlement in such town or place." On the trial, the necessary *residence* was proved, and not denied, and the question about the public rates or taxes was, whether the supposed rates or taxes were imposed *according to law;* it being obvious, that if they were not, this requisition of the law had not been complied with, and the settlement not gained. We think the objection taken to the evidence which was received, and hence to the *character* of the tax and the collection of the money, as a *legal* tax, is well taken, and must prevail. It appears, from the statute above recited, that public taxes are laid in Vermont, much as they are laid in Connecticut. Lists are annually made and returned to the towns and general assembly, accompanied with a certificate, that the oath prescribed by law was duly taken by the list-makers. On these lists taxes are laid, by the inhabitants or communities, from time to time, as is required and voted, followed by warrants for their collection.

Now all these requisites are necessary and indispensable, for a legal tax, and they all necessarily *exist of record*, and of course can be proved by the record, as the best evidence. Secondary evidence, in this case, is not admissible in the first instance. The absence of the best and appropriate evidence creates a suspicion that the tax was not well laid, or is otherwise objectionable, or such evidence would have been forthcoming. The court received the secondary evidence, without a proper foundation being first laid for dispensing with the better and higher evidence. Herein there is error, and a new trial must be allowed.

We think that there is no error in the charge which the court gave to the jury. The request of the defendants, for particular instructions to the jury, must be taken as one and entire. If the whole is not correct, the judge need not regard it, at all, for it is not his duty to dissect it, and select what is right and reject what is wrong. He *may*, if he please, pursue a dif-

ferent course, and comply with the request in part, and this is the course the judge pursued, in this instance. He might have been entirely silent, but he was not silent, and we need only enquire if what he did tell the jury was correct; and we think it was. He would have been wrong, had he told them, they might presume every fact necessary to find the present settlement of the pauper in Marlborough, for this is the substance of the claim. There could be no such legal presumption, but, as matter of fact, the jury might draw such a conclusion as they pleased.

A question of estoppel was made. The plaintiffs claimed, that the question is virtually the same against the defendants as if Weybridge was the defendant in this suit, because, it is said, Weybridge could not set up, that their taxes and their collectors and warrants were not good and effectual, since they raised, from the collectors, the moneys, and have continued to enjoy them. How this would be, if Weybridge was now sued for the support of the pauper, we have no occasion to enquire; but, as to these defendants, we think there is no force in the argument, for there is no privity, between them and Weybridge, to sustain the claim, and therefore they are not estopped by those acts, but may rightfully insist, that all the material facts in the declaration shall be proved and established by common law evidence.

We advise a new trial.

In this opinion the other judges concurred, except STORRS, J., who was disqualified.

New trial to be granted.