REUBEN H. RATHBONE *vs.* THE CITY FIRE INSURANCE COMPANY.

A policy of insurance upon personal property contained a condition that if the building in which it was kept should be used for the purpose of storing any of the articles denominated "hazardous," except as specially agreed to by the company and indorsed on the policy, the insurance should be void. The policy contained a schedule of articles denominated "hazardous," among which was "wine in casks," the same being placed under the head of articles considered hazardous an account of their liability to damage, but for which the rate on the building was not to be increased. Held, that a reasonable construction of this condition would make it apply only to the class of hazardous articles by which the risk to the building was increased.

But held that, however this might be, where the property was, with the consent of the insurance company indorsed on the policy, removed from the building in which it was stored at the time of insurance to another, and wine in casks was at the time stored in the latter building, which fact was known to the agent of the company who consented to the removal, and no objection was made by him on account of it, the insurance was not vitiated by the fact of such storage.

Held also, that the insured might show by parol evidence what representations he made as to the condition of the building to which the property was removed. These oral representations are not to be regarded as coming into conflict with the written representations of the policy. The latter pertain to the risk as it stood before the removal of the property, the former to the risk as it existed after the removal.

And the policy indorsed with an agreement for the removal of the property to another building, and for the continuance of the policy in force as to the property after removal, became in effect a new contract between the parties, and a new risk taken by the company.

And where some elements of the new risk existed which were forbidden by the orig-

inal policy, but which were known to the company when the new risk was taken, their existence does not affect the validity of the new insurance.

Where the property was insured by the original policy to the amount of $200, and after the policy was claimed to have been forfeited by the introduction of new elements of risk, the company, with full knowledge of the facts, by an indorsement on the policy added $100 to the risk on the same property, and in the indorsement stated the whole risk as thus increased to be $300, it was held that the forfeiture, if there was any, was waived by the company. :

Where the condition was that the insurance should be void if articles denominated "hazardous" should be stored in the building *without the consent of the company indorsed on the policy,* and the agent of the company consented to the removal of the property to another building in which such hazardous articles were stored, and agreed to make whatever entry was necessary on the policy to continue it in force nowithstanding such storage, and took and retained the policy for the purpose, it was held that the agreement of the agent was a waiver by the company of the condition which required such written indorsement of consent, until such indorsement should be made.

Where the general agent of an insurance company, acting in the matter of his agency and in relation to the particular loss and controversy in question, stated to an agent of the plaintiff who had prepared and forwarded the preliminary proofs, that it was only the quantity and value of the property that the company disputed, it was held that the evidence was both admissible and important as going to prove a waiver by the company of all objection to the preliminary proofs on account of defects in them.

Where a motion for a new trial merely shows that a party claimed that certain evidence was not admissible, without showing that the claim was made when the evidence was offered, or that the evidence was let in subject to objection and the claim was subsequently made that it should be excluded, or that the court was requested to charge as to its effect or the consideration to be given to it, no question is raised which the court is bound to consider.

Where a request for instructions to the jury is in part abstract, the court is not bound to dissect it and charge the jury as to that part of it which relates to the case.

ASSUMPSIT, on a policy of insurance upon a quantity of cider ; tried to the jury in the superior court, on the general issue with notice, before *Carpenter, J.* The principal defense set up was that the policy was rendered void by the storage of wine in casks in the same building with that in which the cider was stored.

The policy was dated April 1, 1860, and was countersigned by " E. Fuller, agent." The property insured was described in it as follows :—

" $200 on his cider in the two story frame dwelling house, occupied by the assured, and situated on Washington street in Norwich city."

The following indorsements were afterwards made on the policy, at the times when they bear date, by Fuller, the defendants' agent.

" August 12th, 1861.—$200 on cider is removed to his new building on his farm, western part of town of Norwich, where it is now in force.                                  E. F., Agent."

" Sept. 20, 1861.—One hundred dollars is hereby added to the $200 on cider, making in all by this policy on cider $300, terminating April 1st, 1862. ·          E. F., Agent."

The policy contained the following condition :—" If after insurance is effected, either by the original policy or by the renewal thereof, the risk be increased by any means whatever within the control of the insured, or if such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect." Also the following provision :— " It is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above-mentioned premises shall at any time after the making of, and during the time this policy would otherwise continue in force, be appropriated, applied or used, to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra hazardous, or specified in the memorandum of special hazards annexed to this policy, or for the purpose of storing, selling or keeping for sale therein any of the articles, goods or merchandise denominated hazardous or extra hazardous, or included in memorandum of special hazards, except as are herein specially provided for, or hereafter agreed to by this corporation in writing, to be added to or indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect."

The policy also contained the following provision under the head of " Classes of Hazards : "—

" *Hazardous.*—The following trades and occupations, goods, wares and merchandise, are deemed hazardous, and subject the building and all its contents to an additional charge of 10 cents per $100. They are :—China or earthen or glassware

or plate glass in boxes, crates or casks, eating houses or refectories, fire crackers in packages, flax in bales, grocers' stock, gutta percha unmanufactured, hat ironing or trimming or pressing, hay pressed in bundles, hemp in bales, India rubber unmanufactured, manilla grass in bales, oil, porter houses, rags in packages, sail making, segar making, Sisal grass in bales, spirituous liquors, sugars, sulphur, tallow, taverns, wine dealers' stock, (not including wine in glass unpacked) and wool. The following are considered hazardous on account of their liability to damage, and are charged 10 cents per $100 in addition, but do not increase the rate of the building. They are:—Boots and shoes, brushes (stocks of,) card printing, coffee, cotton batting and wadding, dry goods (general stock of,) flour, furs and peltries in packages, hardware and cutlery, hides and leather, indigo, looking glasses in boxes, metals (in bars, rods, pigs or sheets,) paints ground in oil, paper hangings, paper in reams, potash, rice, spices, tailors' stock and ready made clothing, teas, threshed grain, tin or sheet iron or copper ware, wine in casks, wine in glass in packages, window or plate glass in boxes, and generally all other stocks of merchandise (in buildings where fire heat is not used for manufacturing) not elsewhere enumerated."

It appeared from the testimony offered by the plaintiff that at the time of the fire there were stored in the same building with the cider about twenty-five barrels of native wine, also the property of the plaintiff. There was no indorsement on the policy of any permission to store wine on the premises. The defendants claimed that thereby the policy became void, and that the plaintiff could not recover. The plaintiff claimed that the cider, when originally insured, was stored in the city of Norwich, and the wine was stored in another building; that the wine was insured in the Hope Insurance Company of Providence, of which company the said Fuller was also the local agent, and issued the policy on the wine; that early in the month of August, 1861, the plaintiff removed the wine to his new barn in the western part of Norwich, and soon after removed the cider to the same place, having previously obtained permission from Fuller so to do; and that he soon

after applied to Fuller, informed him of such removal, and requested to have both the policy issued by the defendants on the cider, and that issued by the Hope Insurance Company on the wine, continued in full force on the same property in the barn ; and that Fuller, with full knowledge of all the facts, continued the defendants' policy in force, and made the indorsement thereon, previously stated, under date of August 12th, 1861 ; that on the 20th of September, 1861, the plaintiff applied to Fuller for $100 additional insurance on the cider in the defendants' company, which was granted, and that Fuller then had full knowledge of the storing of the wine in the building ; that the premium for the $100 additional insurance was paid, but that nothing extra was paid for such removal. The plaintiff further claimed that at the time the policy was renewed and continued in force on the cider in the new barn, it was the understanding and arrangement between Fuller and himself that everything necessary to be done in order to continue the policy in force would be done by Fuller, and that for that purpose the policy was left in Fuller's hands and there remained until the fire.

The defendants requested the court to charge the jury, " that if, at the time when the fire occurred, the premises were appropriated, applied or used to or for the keeping or storing therein any wine in casks, spirituous liquors, wine dealers' stock, or any of the articles, goods or merchandise denominated hazardous, extra hazardous, or specified or included in the memorandum of special hazards, and not named in the policy, or added to or indorsed upon the same as agreed to by the defendants, in writing, then the policy was void and the plaintiff could not recover."

The defendants also claimed that the parol evidence of Fuller in regard to the circumstances under which the removal of the cider was made, and as to his knowledge that the wine was stored in the building, and as to the oral representations made by the plaintiff, was not admissible in any way to affect the terms of the written policy.

The court instructed the jury as follows :—" The claim of the defendants in respect to the effect of storing wine on the

premises is substantially correct. The parties have a right to make their own contract, and when made it is the duty of courts and juries to give effect to it as made. The storing of wine in the same building with the cider is a violation of the contract, and if there is nothing else in the case, that of itself destroys the policy and entitles the defendants to a verdict. But if the jury shall find that Fuller was the agent of the defendants, with full power to write policies, and at the time of giving consent to continue the insurance on the cider in the new building, had full knowlege that the wine was also stored there, had the policy in his possession, and had an opportunity to indorse upon it the fact that the wine was so stored there, and that the arrangement between the parties was such that the plaintiff had a right to suppose, and did suppose, that the agent of the company would do everything necessary to be done in order to continue the policy in full force ; or in other words if you are satisfied that it was the fair understanding of the parties that permission to store the wine on the premises should be indorsed on the policy, and the agent of the defendants failed to do so through his own neglect, and not through any neglect of the plaintiff, the defendants can not now set up the omission of such indorsement in defense."

The defendants claimed upon the trial that the preliminary proofs of loss submitted by the plaintiff were defective, which the plaintiff denied. The plaintiff however claimed that if any such defect existed it had been waived by the defendants. To prove such waiver the plaintiff offered, in connection with other evidence, the testimony of Fuller, the agent of the defendants in Norwich, who in behalf of the plaintiff had made out and forwarded to the home office the preliminary proofs of his loss, to prove that the general agent of the defendants, while investigating the circumstances of the loss, in a conversation with Fuller, stated to him that the quantity, quality and value of the property were what the company objected to ; and that, although the general agent had full knowledge that the proofs were prepared and forwarded by Fuller, he never at any time made any claim to him that they were defective. To the admission of this testimony the defendants objected,

but the court overruled the objection and permitted the evidence to go to the jury.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial for error in the rulings and charge of the court.

*Wait* and *Pratt*, in support of the motion.

1. The preliminary proofs of loss introduced by the plaintiff were defective in several important particulars. The evidence of Fuller, introduced for the purpose of showing a waiver of these defects, was clearly inadmissible. It did not tend in any degree to show such a waiver. A waiver is defined to be a relinquishment of a right. A question of waiver is also said to be one of intention; that is, the person claiming the right must intend to relinquish it, and must manifest that intention by acts and declarations which shall induce the person of whom the right is claimed to believe that the right is relinquished. Acts or declarations which do not furnish to the party of whom the right is claimed evidence of such relinquishment, are clearly not admissible. Bouvier's Law Dic., *Waiver. Fitch v. Woodruff & Beach Iron Works*, 29 Conn., 82. The declarations of the general agent of the company to the local agent, which were made in the absence of the plaintiff, and which were never communicated to him, were *res inter alios acta.* A conversation of this kind, never communicated to the plaintiff, nor intended to be, and upon the faith of which he never acted, can not be a waiver by the defendants of their rights. *Beach v. Catlin*, 4 Day, 284.

2. The plaintiff having stored wine on the premises, the policy, by the terms of the instrument itself, became void, unless permission to store such wine was indorsed in writing upon such policy. There was no such indorsement, as the record shows. The plaintiff attempted to supply this defect by the parol evidence of Fuller, as to the circumstances under which the removal of the liquor was made, and the understanding at the time of such removal. This evidence was inadmissible for such a purpose, because, 1st. It varies and contradicts the written instrument. 2d. It substitutes an un-

written contract for a written one on which the plaintiff has sued. 3d. It does not aid the construction of the written instrument, but is introduced to show that the intention of the parties was materially different from any meaning that the words which they have used will admit of. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 Conn., 374. *Barrett* v. *Union Mutual Fire Ins. Co.*, 7 Cush., 175. *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 583. *Macomber* v. *Howard Fire Ins. Co.*, 7 id., 257. *Mead* v. *North Western Fire Ins. Co.*, 3 Selden, 530. *Westfall* v. *Hudson River Fire Ins. Co.*, 2 Kernan, 289. *Galpin* v. *Atwater*, 29 Conn., 93.

3. The charge of the court below would seem to indicate that the evidence of Fuller was admitted, not for the purpose of varying or contradicting the policy, but to estop the defendants from setting up the omission of the indorsement in defense. But the principle of estoppel does not apply to the defendants in this case. The fact being found that the wine was stored in violation of the contract, in the language of the charge, " that of itself destroys the policy." The only method by which validity can be given to the policy is by a written indorsement. Being void it can not be revived by force of an estoppel. The evidence was therefore inadmissible. But the facts found on the record, if admissible, would not estop the defendants as charged by the court. The rule in regard to estoppels in pais is, " that where a man by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act upon that belief so as injuriously to alter his previous position, the former is concluded from averring as against the latter a different state of things as existing at that time. *Brown* v. *Wheeler*, 17 Conn., 345. *Whitaker* v. *Williams*, 20 id., 98. *Preston* v. *Mann*, 25 id., 118. *Danforth* v. *Adams*, 29 id., 107.

According to these authorities it is essential that the party seeking to avail himself of an estoppel should show—1st, that the party sought to be estopped has, by willful deception, or by culpable negligence, and with intention to mislead, actually misled him to his injury; 2d, that the conduct of the party claiming the benefit of the estoppel has been influ-

Rathbone *v.* City Fire Insurance Co.

enced by such representations. Applying these principles to the case as it appears on this record, it seems that—1st., Fuller, by whose acts the company is sought to be estopped, was guilty of no willful deception. It did not appear on the trial that he ever was asked to make the indorsement, or that he ever told the plaintiff it was made. 2d. He was guilty of no culpable negligence. The negligence was on the part of the plaintiff. He had abundant opportunity to get the policy, to read it, and to see whether the indorsement was made. It is true that the judge alluded to neglect on the part of Fuller as one reason why the defendants were estopped, but something more than simple neglect is required to create an estoppel. It must be a culpable neglect. 3d. The court instructed the jury that knowledge on the part of the agent that the wine was stored in the building, his having the policy in his possession, and having an opportunity to make the necessary indorsement, the supposition of the plaintiff that the policy was to be kept in force, and a fair understanding that the indorsement would be made, were circumstances to be taken into consideration in deciding whether the defendants were estopped. But these circumstances have been repeatedly decided to be of no weight in cases like the present. *Lee* v. *Howard Fire Ins. Co.*, 3 Gray, 257; and authorities *supra*. In the case in 3 Gray, Bigelow, J., says, in regard to the same argument of estoppel, "It was the assured who were estopped by their own deliberate and solemn agreement in writing, and not the defendants, who relied solely on the terms of the contract sought to be enforced against them."

*Halsey* and *Lucas*, contra.

1. The evidence objected to upon the question of waiver was properly admitted. 1st. The provision requiring preliminary proofs of loss is for the benefit of the defendants, and if any defects existed they might waive all objections on that account. By not pointing out the particular defects objected to, or by placing their refusal to pay upon "the quantity, quality and value of the property," or by their silence in respect to such defects, they were waived. *Aetna Fire Ins. Co.*,

v. *Tyler*, 16 Wend., 401 ; *Turley* v. *North Am. Fire Ins. Co.*, 25 Wend., 374 ; *McMasters* v. *Westchester Mut. Ins. Co.*, id., 379 ; *Bodle* v. *Chenango Mut. Ins. Co.*, 2 Comst., 53 ; *O'Niel* v. *Buffalo Fire Ins. Co.*, 3 id., 122 ; *Bumstead* v. *Dividend Mut. Ins. Co.*, 2 Kernan, 81 ; Angell on Ins., §§ 242–249. 2d. A question of waiver is one of intention, and is for the jury to determine under all the circumstances of the case. Any and all declarations, therefore, furnishing evidence or ground of inference on this subject, are proper for the consideration of the jury. *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 82 ; *Union Bank* v. *Magruder*, 7 Pet., 287 ; *Priest* v. *Citizens' Mut. Ins. Co.*, 3 Allen, 602. 3d. The declarations themselves are admissible evidence on this question. The objection is to the person to whom they were made. Fuller had acted for the plaintiff in preparing the preliminary proofs, and so far represented the plaintiff as well as the defendants. Declarations made to him as to the real question made by them respecting the loss, and silence as to any other claim, were competent on the question of waiver, " in connection with other evidence " on the subject. It would be the duty of Fuller, under the circumstances, to communicate the declarations to the plaintiff. So the declarations made to him were admissible by reason of his relation to both parties. *Turley* v. *North Am. Fire Ins. Co.*, 25 Wend., 378.

2. As the court can see that substantial justice was done on the former trial, a new trial will not be granted. *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 82 ; *Ashmead* v. *Colby*, 26 id., 288 ; *Brown* v. *Keach*, 24 id., 73 ; *Cowles* v. *Coe*, 21 id., 220.

3. The charge was correct. The verdict finds that Fuller was the agent of the defendants with full power to write policies, and at the time of indorsing consent on the policy to continue the insurance on the cider in the new building, had full knowledge that the wine was also stored there, had the policy in his possession, and had an opportunity to indorse upon it the fact that the wine was so stored there ; that the arrangement between the parties was such that the plaintiff

had a right to suppose, and did suppose, that the agent of the company would do everything necessary to be done in order to continue the policy in full force ; and that it was the fair understanding of the parties that permission to store the wine on the premises should be indorsed on the policy, and that the agent of the defendants failed to do so through his own neglect, and not through any neglect of the plaintiff; and that the policy was left in the agent's hands for that purpose.    Under these circumstances the defendants could not set up the want of such indorsement in defense.    1st. It is a matter of defense.    They can not set up their own wrong or neglect in defense, nor any matter which they chose to waive.    *Hough* v. *City Fire Ins. Co.*, 29 Conn., 10 ; *Bouton* v. *Am. Mut. Life Ins. Co.*, 25 id., .542.    *Sheldon* v. *Conn. Mut. Life Ins. Co.*, id., 207 ; *Peck* v. *New London County Mut. Ins. Co.*, 22 id., 575; *Malleable Iron Works* v. *Phœnix Ins. Co.*, 25 id., 465 ; *Bulkeley* v. *The Derby Fishing Co.*, 2 id., 252; *Ætna Ins. Co.* v. *Jackson*, 16 B. Monr., 242 ; *Buckbee* v. *U. S. Ins. Annu. & Trust Co.*, 18 Barb., 541 ; *New York Central Ins. Co.* v. *Nat. Pro. Ins. Co.*, 20 id., 468 ; *Wing* v. *Harvey*, 27 Eng. L. & Eq., 140 ; Angell on Ins., § 203, and note to § 343.    2d. The extent of Fuller's authority was properly left to the jury.    3d. The defendants were as much bound by the omission or neglect of their agent as by that of any officer of the company.    These points are sustained by the authorities cited under the preceding subdivision.    Story on Agency, § 140.

4. The parol evidence of Fuller, of the circumstances under which the removal of the cider was made, was admissible. This is settled by all the cases cited under the third point, which decide its effect.

BUTLER, J.    The testimony of Fuller relative to the waiver of defects in the preliminary proofs was clearly admissible. The plaintiff was entitled to prove that waiver, and by any evidence which tended to prove it.    An admission of the company made by their general agent while acting as such, and in respect to the particular loss and controversy, that it

was only the quantity and value of the cider which the company disputed, was pertinent and important, whether made directly to the plaintiff, or to the agent who was employed by the plaintiff to prepare the preliminary proofs and present them on his behalf. Moreover the evidence was offered in connection with other evidence which is not stated. For aught that appears it may have been evidence to show that the general agent was expressly authorized to make the admission to the plaintiff through Mr. Fuller, for the purpose of narrowing the controversy.

2. Where a motion merely shows that a party claimed that certain evidence was not admissible in any way to affect the terms of a written instrument, without showing that the claim was made when the evidence was offered; or that the evidence was let in subject to exception, and the claim was subsequently made that it should be excluded; or that the court were requested to charge as to its effect or the consideration to be given to it, no question is raised which the court is bound to consider. And such is the import of the motion in this case. It does not appear when or in what way the claim was made, or what disposition the court made of it. Nevertheless, no injustice was done if the evidence was in fact regularly objected to and admitted, or a request to charge the jury that the evidence was not to be considered was disregarded by the court. The plaintiff sought permission orally to change the place of storage, and of course the risk. The conditions of the policy in respect to a description of the new risk in a written application or survey were waived, and there is no representation of it in or upon the policy; and it was competent for the plaintiff to show what the new risk was when taken; that it was fully though orally represented to the defendants, and known to them; and if inconsistent with any condition of the policy, that the condition was waived. None of these affected the terms of the written policy. The cases read and relied on at the bar to this point, are cases where there was a written representation of the risk, either in the policy or application, and parol evidence of a usage, or of a cotemporaneous parol agreement, or that the defendants had

knowledge respecting an element of risk not included in the representation, or that an element was left out by their agent though known to him, was holden inadmissible. None of these cases apply.

3. We are satisfied that the defendants were not entitled to the instructions requested. As to all the articles named in the request except the wine in casks, it was abstract, and the court was not bound to dissect and charge the jury in respect to any part of it. *Cowles* v. *Bacon*, 21 Conn., 451; *Marlborough* v. *Sisson*, 23 Conn., 44. The point, and the only real point made on the trial and which could be raised by the request, was, that the policy was void by reason of the fact that *wine in casks* was stored in the barn at the time of the fire, and was not, *in terms*, agreed to in the indorsement.

The defendants undertook to stand upon a defense which possibly they might have made if the cider had remained in the original place of storage and the wine had afterwards been stored with it. We say *possibly*, for it is questionable whether, upon a just and reasonable interpretation of this policy, such storage would have constituted a defense, if the dwelling house and its contents had been consumed. There is a condition in it " that if, after insurance is effected, either by the original policy or a renewal thereof, the risk shall be increased by any means whatever within the control of the insured, or if such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of issuing the policy, such insurance shall be void and of no effect; " but that condition would not have been broken by storing the wine in the dwelling house after the issuing of the policy, because " wine in casks " is not hazardous to the building, and is in substance declared not to be in the policy ; and of course could not increase the risk to the building, or its contents. The defendants rely however on another condition, which is in these words :—" If the premises shall at any time after the making of, and during the time this policy would otherwise continue in force, be appropriated, applied or used, to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra-

hazardous, or specified in the memorandum of special hazards annexed to this policy, or for the purpose of storing, selling or keeping for sale therein any of the articles, goods or merchandize denominated hazardous or extra-hazardous, or included in the memorandum of special hazards, except as specially provided for or hereafter agreed to by this corporation in writing to be added to or indorsed on this policy, then, &c., this policy to be of no effect." The purpose of this condition it is claimed is substantially the same as the other; but it was obviously inserted with more immediate if not sole reference to *buildings* insured, and with a view to specify particularly what should be considered an increase of the risk. The claim of the defendants in substance is, that although they could not defend on the ground of a breach of a condition general in its terms, and covering *every thing* which could *actually* increase the risk, yet they can defend under another condition, which, by a reference to the schedules, makes the policy void if an article be stored on the premises which they concede in the policy does not *in fact* increase it. Was that condition inserted for any such purpose? Does the insured when he takes such a policy know, or suppose, that he is bound to avoid storing in his building any articles which are in danger of injury by removal only, and do not endanger the building? Is it so that a policy issued upon a dwelling house, with this condition in it, is avoided, if the owner is a shoemaker and stores a case or two of boots and shoes in it; or a clothing contractor, and stores a few cases of made or unmade garments in it; or an officer, and stores in his dwelling house, pending the litigation, a lot of hardware which he has attached; or a farmer, and in accordance with a general custom stores his threshed grain in his garret? It is not to be presumed that the company would impose conditions which would unnecessarily restrict the insured in the fair and reasonable use of the premises; or that the insured would accept such a policy if he so understood it. Nor are we for a moment to suppose that the intelligent and upright officers of this company intended to insert a condition which would entrap those whom they insured, by leading them to suppose that so long

as they carefully abstained from every thing which could in fact increase the risk, in conformity to the condition first recited, they did all which honesty, fairness and the policy required of them. But are we on the other hand to believe that they have intentionally inserted a condition for the purpose of preventing an *increase* of the risk, by prohibiting that which *could not increase* it? Doubtless the parties have a right to make their own contracts. The insurers have a right, and it is their duty, to insert such conditions as experience and the known carelessness and depravity of men require, to secure an honest carefulness and prevent a dishonest loss; and if they did in fact make a contract which forbade the storing of articles hazardous only because liable to be injured in removal, it must be sustained. But did the parties intend to make such a contract, and did they make it? Was that their mutual understanding of it? The schedules are divided into those which do and those which do not *increase the rate* on the building, and of course those which are and those which are not *hazardous* to it. Why that division? The *rates* are the *same*, and it is not easy to discover a reason for it, unless it was for the purpose of *excepting* the articles not hazardous to the building from the schedule of articles which are declared to be thus hazardous and to which the condition was intended to apply. Is it not the fair interpretation of the condition in question, when read in connection with the other conditions and terms of the policy, and with a reasonable regard to the purpose of the parties respectively, that when it speaks of any of the articles denominated hazardous, &c., it refers to the articles denominated hazardous to *the building*, and does not refer to those which are apparently *excepted* from the schedule. It is not necessary to decide this question, and we do not intend to decide it; but this class of contracts is of great importance, the interests involved are immense, and it is exceedingly important that the conditions of the policies should be consistent with the purpose of the contract, and adapted to the intelligence of all classes of men, and without any apparent unfairness of purpose, or danger of injustice; and we can not pass it over with a seeming acquiescence in

the applicability or construction of the condition claimed by the defendants.

Waiving a decision of the foregoing question, and assuming the construction claimed by the defendants to be the correct one, still they were not entitled to the instruction prayed for, and if the charge of the court had been erroneous they would not be entitled to a new trial, because substantial justice was done by the verdict, and no other result could be sustained on the conceded facts.

First, the same testimony which showed that the wine was in the barn at the time of the fire, showed that it was there when the cider was removed to it, and that the defendants knew it. It is not therefore the case which the defendants assume it to be. There was no storage of wine in the *premises* named in the policy, *after* it was issued, within the prohibition of the condition; but the taking of a *new* and distinct *risk,* in another and different place, although on the same article. It was a short way of making a new contract of insurance. In *Benjamin* v. *The Saratoga County Mutual Fire Insurance Company,* (17 N. York R., 415,) the plaintiff obtained an insurance in behalf of a company, in his name as agent. He had at the same time a mortgage on the property and foreclosed it. That changed the title and avoided the policy. The plaintiff wrote to the defendants and asked that the policy should be continued in force for his benefit, and they by letter assented to it. The court held that the effect of this was to create a new contract in a short way between the parties, and that the policy continued in force under the new agreement. So here the plaintiff changed the location of the cider, and made a new risk, and that avoided the policy, for by its terms he warranted that it should remain in his dwelling house in Norwich. The insurance company with full knowledge of the elements of the new risk, agreed that the policy should embrace it and continue in force, and indorsed such agreement on the policy. They thereby took the new risk, precisely as they took the old one, as it was when taken, and must abide it as taken. Nothing can be clearer than that when a company take a risk without requiring any represen-

tation of its elements, either in a written application or survey, or in the policy, they waive the condition requiring such a description and take the risk *as it is ;* and can make no defense because of any element of which they had knowledge, and which was not misrepresented to them. *Bennett* v. *Saratoga County Mutual Ins. Co.*, 5 Hill, 192 ; *Beebe* v. *Hartford County Mut. Ins. Co.*, 25 Conn., 51. If then it be admitted that the condition in question applies to the new *premises*, and of course new risk, there has been no breach of it, because the storage of the wine in casks was an element of the new risk *when taken*, and there was no subsequent storage of any forbidden article with it. Moreover, the indorsement in fact made upon the policy, with knowledge that the wine was stored in the barn, and was to be continued there, was an agreement in writing that it might be continued there, and a compliance with the condition. " It is a general rule that a writing contains all that may be fairly implied from it ; " and where there is no written representation, but an agreement in writing in general terms to insure, or to continue an insurance in force, in a new locality, it is by implication a part of the agreement that every existing element of the risk of which the insurer has knowledge, or which is not unlawfully concealed from him, may remain as it is. This indorsement therefore imports all that the condition, if applicable, required under the circumstances.

Again, after the removal of the cider to the barn, and while the wine in casks was stored there, and with full knowledge of the fact, the defendants took a new and additional *amount* on the same cider. If any forfeiture could be incurred it had then been incurred, and taking the additional amount was not only binding as to the additional $100 thus taken as an original insurance, but a clear waiver of any prior forfeiture as to the $200 previously insured. Moreover, in that indorsement the policy is *expressly* reaffirmed as to the $200, and continued in force for the whole sum of $300. The defendants therefore have in fact twice agreed in writing by indorsement that the wine might remain there, and assumed the risk as it was, with full knowledge, and without requiring

any written representation, or making objection on the ground of the want of it.

We think it obvious from the foregoing considerations that the defense was groundless and that the defendants were not entitled to a verdict upon the issues made, whatever the charge of the judge. But that charge did not do the defendants injustice. If it was true, as the plaintiff claimed, that the defendants agreed that the plaintiff might store the cider with the wine, and to make such indorsement upon the policy as was necessary to continue it in force notwithstanding such storage, and had the policy for that purpose, it was their duty to do it, and the agreement was a *waiver of the condition* which required it until the duty was performed.

A new trial is not advised.

In this opinion the other judges concurred.